O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| EDWARD ANTHONY CEJA,<br><br>Petitioner,<br><br>v.<br><br>M.D. BITER, Warden,<br><br>Respondent. | Case No. SACV 11-0477-MLG<br><br>MEMORANDUM OPINION AND ORDER |

## I. Background

### A. Procedural History

Petitioner Edward Ceja was convicted by an Orange County Superior Court jury of possession of a firearm by a felon (Cal. Penal Code § 12021(a)(1)) and active participation in a criminal street gang (Cal. Penal Code § 186.22(a)). The jury also found true the allegation that Petitioner possessed the firearm for the benefit of a criminal street gang (Cal. Penal Code § 186.22(b)(1)). Petitioner admitted that he had suffered a prior "strike" conviction (Cal. Penal Code §§ 667(d),(e)(1), 1170.12(b),(c)(1)). Petitioner was sentenced

to prison for a term of twelve years.

Petitioner appealed his conviction to the California Court of Appeal, arguing that the evidence was insufficient to support the firearm charge and that he was denied a fair trial. (Lodgment 4.) On September 20, 2010, the court of appeal affirmed Petitioner's conviction in a written opinion. (Lodgment 7.) Petitioner filed a petition for review in the California Supreme Court, raising the same claims as in his earlier appeal. (Lodgment 8). The California Supreme Court summarily denied the petition. (Lodgment 9.) On March 28, 2011, Petitioner filed this petition for writ of habeas corpus, raising identical grounds for relief.

**B. Facts**

The underlying facts are excerpted from the unpublished opinion of the California Court of Appeal. *People v. Edward Anthony Ceja*, No. G042106 (Cal.Ct.App., Sept. 20, 2010) (Lodgment 7).[1] In all quoted sections of this Report, the term "Petitioner" is substituted for "Defendant."

> 1. Events Leading up to November 22, 2008
>
> Frankie Velasquez, a Folks gang member, lived in Folks gang territory on the corner of Neighbors Avenue and Mohican Way in Anaheim. Two weeks before the charged incident, members of Citron Street, a rival gang, drove through the Folks neighborhood while Velasquez was standing outside his house. The Citron Street members challenged Velasquez and fired two shots at him with a "bird shot

---

[1] Those sections of the court of appeal opinion which are not relevant to this habeas corpus petition have been omitted for purposes of brevity.

2

shotgun," blinding him.

On November 20, 2008, Anaheim Police Officer Brian Browne, who also testified as a gang expert, was on patrol with his partner in the Mohican Glenn neighborhood. His partner saw Velasquez with approximately five other "gang types" in the alley by the garage behind Velasquez's house. According to Browne, Petitioner stood out because of all of his tattoos. Browne heard the officers' presence announced as they approached the group on foot. Officer Browne detained the group, which included Petitioner and Robert Kundysek, an active member of Folks.

Petitioner was cooperative and discussed his tattoos. Browne spoke about Velasquez having been shot. Petitioner said he did not know what had happened yet because he had just been released from prison four days earlier. Petitioner admitted being a member of Folks and that his moniker was "Soldier." Browne asked why Petitioner was "posted up" and Petitioner said because it was his "hood." When asked if he was going to retaliate for Velasquez's shooting, Petitioner said, "We'll see. I just got out, and I need to find out what is going on." Browne advised Petitioner he was in violation of his parole by congregating with other gang members and Petitioner said they were just visiting him to pay him respect for having served his time in prison.

Browne contacted Petitioner in the neighborhood again the next evening. Petitioner was standing by himself in front of a fence bordering his apartment complex.

Petitioner's head was cleanly shaved and the tattoos on his head were exposed. Petitioner did not attempt to run. He said he still backed up Folks, but that he did not know whether he was going to participate in any gang-related activity. The police searched Petitioner on each occasion. He did not have any weapons or contraband on his person.

2. November 22, 2008

Officer Richard Browning of the Anaheim Police Department patrols the Folks gang territory, which consists of large apartment complexes, duplexes and fourplexes. On November 22, he was on patrol in that area in a marked black and white patrol car. As he approached Mochican, he saw 10 to 15 people underneath a tree in front of an apartment on Neighbors, and about 10 to 15 yards away, three people standing underneath a street sign on the corner of Mohican and Neighbors. Browning identified the three as Petitioner, Kundysek, and Erik Lopez. As Browning's vehicle turned the corner, the three looked over their shoulders and ran westbound on Neighbors.

Browning drove into an alleyway in an attempt to intercept them. He turned off the patrol car's lights and got out, walking into a breezeway between two sets of apartments. He "peeked around the corner" and saw Petitioner go to the front lawn of one of the apartment buildings. Browning followed, attempting to close the distance between them. Hearing a voice, Browning stopped. He saw Kundysek looking up and down the street. Kundysek and Petitioner started to walk across the lawn. Browning

4

walked to within five feet of Petitioner and Kundysek without them noticing. When he turned the corner, he saw Petitioner, Kundysek, and Lopez together. He detained all three, ordered them to their knees, and called for backup. Petitioner had on gloves at the time he was arrested.

Officers Anderson and Staymates responded. Browning told Anderson to check the areas around the breezeway and in front of the apartments for a weapon or contraband. Staymates watched Petitioner, Kundysek, and Lopez while Anderson and Browning searched. Anderson found a gun about five to six inches from the top of a bush. The gun and bullets were inside a black beanie. Browning testified that the beanie was warm to the touch.

Browning pulled Lopez away from the other two to talk about the gun. Browning said they found a gun and wanted to know who it belonged to, because he knew it "belonged to one of the three of them." Lopez motioned with his head toward Petitioner and said Petitioner had the gun. Lopez said he could not talk in from of the others. Brown said they would talk at the police station.

3. Erik Lopez's Testimony

Lopez testified under a grant of immunity. He had lived in the Folks neighborhood for four or five months and was familiar with the Folks gang. On November 22, he was walking to the house of a girl he knew when he saw Petitioner standing on the corner of Neighbors and Mohican. Petitioner, who Lopez knew only as "Soldier," asked Lopez to "post up" with him. According to Lopez, "post up" means

5

to stand around doing nothing. Lopez said he had to go somewhere and asked Petitioner why he was not hanging out with the others. Petitioner said he did not want to shoot in front of children if someone came through the neighborhood.

Lopez went to visit the girl and was on his way home about an hour later, at around 9:30 p.m. Petitioner was standing on the same corner, talking to Kundysek. Lopez said Petitioner was wearing a beanie each time he saw him that day.

Petitioner and Kundysek asked Lopez to join them when Lopez stopped briefly to talk. He told them he had to get home for curfew and started to walk away. Lopez then saw Petitioner and Kundysek running. One of them said that "the cops are coming." Kundysek and Petitioner ran in between some duplexes and Lopez kept walking. Lopez said he saw Petitioner take off his beanie, take something from his waistband, put it inside the beanie, and throw the beanie inside the bush. Although Lopez did not see what Petitioner put into the beanie, he assumed it was a gun.

    4. DNA and Fingerprint Evidence

The gun was dusted for fingerprints but none were found. DNA samples were collected from the gun's grip, trigger and magazine release. Buccal swabs were taken from Petitioner, Kundysek and Lopez but they were excluded as contributors.

    5. The Gang Expert's Testimony

Browne testified that he has investigated several

crimes committed by Folks gang members. Folks stands for Family of Latin Kings. It is a traditional Hispanic street gang and has been in existence since at least the early 1980's. It has approximately 60 documented members, about one-half of whom are active in the gang. Its major sign is FOLKS, but it also uses AFG, GF and Family of Latin Kings. The gang's primary activities include felony gun possession and felony vandalism. The prosecution introduced the convictions of various Folks gang members, including 2008 convictions for felony assault and active participation in a criminal street gang, and 2007 convictions for concealment of a firearm in a vehicle by an active gang participant and active participation in a criminal street gang.

Browne testified that Petitioner was a member of the Folks criminal street gang on November 22, 2008. In reaching his conclusion, Browne investigated Petitioner's background and considered a number of factors. Petitioner had Folks tattoos. He received a Step notice in 2006. On at least 15 occasions, Petitioner was contacted by police while he was in the presence of other Folks gang members. Browne also considered Petitioner's 2007 statements that he is "a Folkster till I die" and that if anything happens in the neighborhood, he is probably going to know about and be involved in it.

Browne also testified to the meaning of Petitioner's tattoos. Petitioner has an "A" tattooed on the top of his head. The "A" signifies Anaheim, letting others know he is

7

from there and backs up the city. "AFG," which stands for Anaheim Folks Gang, is tattooed on the top of his head. "Anaheim" is tattooed across the back of his neck with "Folks" tattooed beneath it, indicating that he backs up the Folks gang. His moniker "Soldier" is tattooed on him as well. On his right hand is "Halo," another way of referring to Anaheim via the Angels baseball team. On his left hand is "City." He has tattoos on his fingers of the words "Vago" and "Malo," which are cliques of the Folks gang. One of his hands also bears the tattoo "167," which stands for AFG, the first, sixth and seventh letters of the alphabet. Another of his tattoos reads "R.I.P. Triste." Triste was a Folks gang member murdered in the neighborhood by a rival gang in 2002. On his left hand, Petitioner has three dots, a common tattoo among gang members, meaning "my crazy life, la vida loca." Petitioner obtained most of his tattoos between 2006 and 2008.

Tattoos are "extremely significant" in the gang culture because the member becomes a walking billboard for the gang. The existence of tattoos means members of other gangs do not have to "hit up" the person because the tattoos declare where he is from. Tattoos also indicate that the person protects or commits crime with his gang. Petitioner's tattoos are consistent with gang tattoos.

The prosecutor provided Browne with a set of facts in a hypothetical situation, which were similar to the facts of the charged offense, and asked Browne if he had an opinion as to whether the offense was for the benefit of,

8

> at the direction of, or in association with, a criminal street gang. Browne opined the offense was for the benefit of Folks. According to Browne, "posting up" is standing in a location within the neighborhood where a gang member feels he will be seen by any rival gang members that come into the neighborhood. In essence, the individual posting up is protecting the neighborhood. Many times, the person posting up will have weapons hidden in close proximity, either in a bush, a trashcan, or on his person. Posting up with a loaded firearm benefits Folks by providing the gang with an advantage over any gang that should come through Folks' neighborhood. The reputation of a gang member who posts up with a firearm is benefitted. The fact that more than one gang member posted up supported a conclusion that the offense was committed in association with the criminal street gang.

(Lodgment 7 at 3-9.)

## II. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal habeas corpus relief is available to state prisoners who are in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). To establish a right to relief, a petitioner must show that the state's highest court rejected the petitioner's claim on the merits, and that this rejection was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d); *Harrington v. Richter*, --- U.S. ---, 131 S.Ct. 770, 783-84 (2011). These standards apply regardless of whether the state court explained its reasons for rejecting a prisoner's claim. *Richter*, 131 S.Ct. at 784 ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.").

It is not enough that a federal court conclude "in its independent judgment" that the state court decision is incorrect or erroneous. *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam)). "The state court's application of clearly established law must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *see also Renico v. Lett*, --- U.S. ---, 130 S.Ct. 1855, 1865 (2010). AEDPA imposes a "'highly deferential standard for evaluating state-court rulings; which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (quoting *Woodford*, 537 U.S. at 24); *Vasquez v. Kirkland*, 572 F.3d 1029, 1035 (9th Cir. 2009).

Habeas relief is unavailable if "fairminded jurists could disagree" about the correctness of the state court decision. *Richter*, 131 S.Ct. at 786 (quoting *Yarborough*, 541 U.S. at 664)(internal quotation marks omitted). For habeas relief to be granted, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S.Ct. at

10

786-87.

The claims raised in the instant petition were presented to the California Supreme Court, but that court did not issue a reasoned decision. (Lodgment 9.) Accordingly, this Court must "look through" the unexplained California Supreme Court decision to the last reasoned decision as the basis for the state supreme court judgment. *See Mendez v. Knowles*, 556 F.3d 757, 767 (9th Cir. 2009) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)). The California Court of Appeal, in a reasoned opinion on the merits, rejected Petitioner's claims. (Lodgment 7.) Therefore, the reasoning of the California Court of Appeal will be considered to determine whether the California Supreme Court's decision is contrary to, or an unreasonable application of, clearly established federal law.

**III. Discussion**

**A. The Evidence Was Sufficient to Support Petitioner's Conviction for Felon in Possession of a Firearm**

Petitioner contends that the evidence produced at trial was insufficient to support his conviction for felon in possession of a firearm because he was never seen with the gun, it was not found on his person and there was no fingerprint or DNA evidence linking him to the gun. (Pet. at 5.) The finding by the California Court of Appeal that there was sufficient evidence to convict Petitioner of the crime of felon in possession of a firearm was neither contrary to nor an unreasonable application of federal law, nor an unreasonable determination of the facts in light of the evidence presented.

In his direct appeal, Petitioner argued that there was insufficient evidence to support his conviction for felon in

possession of a firearm because the prosecution failed to prove that he knew of or controlled the gun found in the beanie in the bush. The elements of the offense of felon in possession of a firearm are (1) conviction of a felony and (2) ownership, possession, custody or control of a firearm capable of being concealed on the person. Cal. Penal Code § 12021(a)(1). No specific criminal intent is required, and a general intent to commit the proscribed act is sufficient to sustain a conviction. *People v. Snyder*, 32 Cal.3d 590, 592 (1982).

The California Court of Appeal rejected Petitioner's claim, stating as follows:

> Viewing the evidence in the light most favorable to the judgment, Petitioner, Kundysek, and Lopez were on a street corner in Folks gang territory when a police patrol car appeared. All three ran away. Officer Browning caught and detained them. Believing contraband or a weapon may have been tossed during the chase, a search of the area was conducted. A beanie containing a gun and bullets was found hidden in a bush where Browning, looking for the suspects, saw Petitioner reappear. The jury could reasonably infer the beanie had been placed in the bush recently because the beanie was still warm to the touch on this cool night. The fact that Petitioner wore gloves at the time would account for the lack of his DNA or fingerprints on the weapon. Moreover, Petitioner had been stopped and searched by police each of the two preceding days. He did not run on either occasion. The jury could reasonably infer Petitioner ran this time because he had a gun on his person and assumed he would again be searched.
>
> These facts sufficiently corroborated Lopez's testimony

>    that he saw Petitioner remove something from his waistband,
>    put it in the beanie and place the beanie in the bush. The
>    evidence is substantial and supports the charge of felon in
>    possession of a firearm.

(Lodgment 7 at 10-11.)

It is clearly established that the Due Process Clause of the Fourteenth Amendment requires that "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof – defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia*, 443 U.S. 307, 316 (1979) (explaining *In re Winship*, 397 U.S. 358, 364 (1970)). To determine whether a criminal conviction satisfies this constitutional requirement, [a] state court must decide under *Jackson* "whether the evidence, viewed in the light most favorable to the prosecution, would allow *any* rational trier of fact to find the defendant guilty beyond a reasonable doubt." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005) (citing *Jackson*, 443 U.S. at 319).

In performing a *Jackson* analysis, "circumstantial evidence and inferences drawn from [the record] may be sufficient to sustain a conviction." *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995). A jury's credibility determinations are "entitled to near-total deference under *Jackson*." *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004). The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Chein v. Shumsky*, 373 F.3d 978, 983 (9th Cir. 2004) (en banc) (internal quotation marks omitted). On habeas review, a federal court must apply the *Jackson* standard "with an additional

layer of deference." *Juan H.*, 408 F.3d at 1274. The role of a federal habeas court under AEDPA is then to determine "whether a state court determination that evidence was sufficient to support a conviction was an 'objectively unreasonable' application of *Jackson*." *Id.* at 1274-1275.

Viewed in the light most favorable to the judgment, a rational trier of fact could find beyond a reasonable doubt that Petitioner was guilty of being a felon in possession of a firearm. As explained by the court of appeal, Officer Browning testified that he found a beanie containing a gun hidden in a bush near where he had been chasing Petitioner. The beanie was warm to the touch and therefore had likely been recently placed in the bush. Erik Lopez testified that he saw Petitioner remove his beanie, take something from his waistband and put it in the beanie, and then place the beanie in the bush. Finally, based upon the testimony of Officer Browne that Petitioner had not run when he had been searched on two separate occasions and found not to have a weapon, the jury could reasonably infer that the reason that Petitioner ran that night was because he had a weapon on his person. This evidence was sufficient to allow a rational trier of fact to conclude beyond a reasonable doubt that Petitioner was guilty of being a felon in possession of a firearm.

The California Court of Appeal's decision was a reasonable application of *Jackson* to the facts of this case. Accordingly, habeas relief is not warranted on this claim.

**B. Petitioner Has Failed to Show That He Was Denied a Fair Trial on the Criminal Street Gang Participation Charge**

Petitioner contends that he was denied due process and a fair trial with respect to his conviction for active participation in a

14

criminal street gang based upon the following alleged errors: (1) the trial court denied his request for bifurcation of the gang allegations; (2) the gang expert improperly testified regarding matters that were excluded from trial; and (3) a witness lied under oath. (Pet. at 5.) Petitioner has failed to show that the decision of the California Court of Appeal rejecting this claim was either contrary to or an unreasonable application of federal law.[2]

### 1. Bifurcation

Prior to trial, Petitioner moved to bifurcate the trial on the gang related allegations from the trial on the underlying gun possession charge, arguing that the evidence introduced to support the gang allegations would be more prejudicial than probative. The trial court denied the motion, stating that it viewed the matter as a "gang-motivated case." The trial court also stated that it would be very difficult to try the matter without bringing to the jury's attention why Lopez was "hanging around" with Petitioner that day and why they were "posted up," guarding Velasquez's residence and the gang's turf. The trial court concluded that the probative value of

---

[2] Respondent contends that this claim is unexhausted because Petitioner failed to alert the California Supreme Court to the federal constitutional basis of the claim, and therefore the petition should be dismissed as a mixed petition. (Ans. at 13.) *See Rose v. Lundy*, 455 U.S. 509, 522 (1982). However, when an unexhausted ground for relief does not raise a colorable federal claim, a federal court may deny relief on the merits. 28 U.S.C. § 2254(b)(2); *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005). The purpose of this rule, as explained by a House Report on the provision, is to "help avoid the waste of state and federal resources" that results when a "hopeless" claim for relief is sent back to state courts to exhaust state remedies. *Cassett*, 406 F.3d at 624 (quoting H.R. Rep. 104-23, 1995 WL 56412, at *9-10 (Feb. 8, 1995)). Because Petitioner's claim is clearly meritless, the Court will address the substance of the claim rather than needlessly require Petitioner to first raise the same issue as a federal claim in state court.

15

the gang evidence to prove motive outweighed any prejudice from its introduction. (Lodgment 7 at 13.)

The California Court of Appeal rejected Petitioner's claim that the trial court abused its discretion in denying his motion to bifurcate the gang allegation from the underlying offense. The court of appeal found that the gang evidence was admissible to prove Petitioner's motive for committing the underlying weapons charge: "The evidence indicated Petitioner 'posted up' in a position where he would be visible to and could shoot any rival gang entering Folks territory, such as Citron Street, the gang that just two weeks earlier went into Folks' territory and shot Velasquez." (Lodgment 7 at 13.)

The decision of the California Court of Appeal is neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent because no Supreme Court case has squarely addressed whether bifurcation of the trial of a gang sentencing enhancement from trial of the underlying offense is constitutionally mandated. *See Fuentes v. Hall*, 2009 WL 256558, at *4 (C.D.Cal. 2009). Moreover, as noted *Spencer v. Texas*, 385 U.S. 554, 565-566 (1967), "[t]wo-part jury trials are rare in our jurisprudence; they have never been compelled by this Court as a matter of constitutional law, or even as a matter of federal procedure." In the absence of clearly established Supreme Court precedent, relief is not available.

Alternatively, it is well established that a joinder of charges or a failure to separate the guilt from the sentencing phase violates due process only if it results in prejudice so great as to deny a defendant his right to a fair trial. *United States v. Lane*, 474 U.S. 438, 449 (1986). This principle has repeatedly been applied to gang

16

enhancement bifurcation claims such as that presented here. *See, e.g., Mendoza v. Sisto*, 2008 WL 2025144, *9 (E.D. Cal. 2008); *Vang v. Runnels*, 2008 WL 324101, *9 (E.D. Cal. 2008); *Gilbert v. Yates*, 2007 WL 776284, *5 (N.D. Cal. 2007). Moreover, the Ninth Circuit has held that a trial court's refusal to sever counts will justify habeas relief only when prejudice is so great that it "had a substantial and injurious effect or influence in determining the jury's verdict." *Sandoval v. Calderon*, 241 F.3d 765, 772 (9th Cir. 2000); *see also Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). As stated in *Gilbert* at *5, "the admission of evidence violates due process if there are no permissible inferences the jury may draw from the evidence. *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991)."

Petitioner's claim fails because he cannot demonstrate prejudice arising from the trial court's refusal to bifurcate the trial of the gang allegations from the trial on the underlying gun possession offense. As noted by the court of appeal, the evidence of Petitioner's gang evidence was relevant to demonstrate his motive for carrying the gun.

In light of the admissibility of the gang evidence to establish motive, as well as the substantial weight of the evidence against Petitioner on the underlying weapons offense, Petitioner has failed to show that the trial court's refusal to bifurcate the gang enhancement had a "substantial and injurious effect" on the verdict and thereby deprived him of a fair trial. Therefore, the state court's rejection of Petitioner's claim was not contrary to nor an unreasonable application of clearly established federal law, and Petitioner is not entitled to habeas relief on this claim.

//

## 2. Gang Expert Testimony

Based upon Officer Browne's preliminary examination testimony, Petitioner brought a pretrial motion to prevent Browne from using the term "gang gun theory" or referencing "Mexican Mafia, Surenos." The trial court ordered that the gang expert was not to testify about the Mexican Mafia. The court also held that the prosecutor could introduce evidence of a "gang gun," but that the expert could not opine that if a number of individuals were "posting up" together and a gun was present, each would know of the gun's presence.

On direct examination, the prosecutor asked Browne about police questioning of gang members for intelligence gathering purposes as opposed to crime investigation. Browne answered: "We gather – we are looking for a lot of things when we are talking to them. One, the way they are dressing, the trends that are going on with clothing, tattoos – tattoos that are becoming more and more prevalent to that specific gang with Orange County or to Surenos, which is..." Petitioner immediately objected and the reference to Surenos was stricken. (Lodgment 7 at 13-14.)

The California Court of Appeal rejected Petitioner's claim of error: "Here there was no reference to the Mexican Mafia because the mention of Surenos was stricken before the jury learned what the term meant. Under these circumstances, Petitioner was not prejudiced .... Moreover, the jury was instructed it could not consider stricken testimony and we presume it followed the instruction." (Lodgment 7 at 14.)

Petitioner cannot show that he was prejudiced by the gang expert's use of the word "Surenos." The gang expert only used the word on a single occasion, there was an immediate objection, and the

18

trial court struck the reference with an instruction directing the jury not to consider stricken testimony as evidence. The Supreme Court has held that a single question followed by an immediate objection and a curative instruction does not violate a defendant's due process rights. *Greer v. Miller*, 483 U.S. 756, 765-67 (1987). Accordingly, Petitioner is not entitled to relief on this claim of error.

### 3. Witness Perjury

Petitioner contends that a witness "admitted to lying under oath." (Pet. at 5.) Although Petitioner apparently did not raise this claim in the California state courts, the Court will nevertheless address this claim on the merits rather than require Petitioner to exhaust this claim in the state courts.

Petitioner fails to identify the witness by name or state specifically what the witness allegedly lied about. Petitioner also fails to provide any citation to the record to support his claim. Petitioner's conclusory allegations about alleged witness perjury are clearly insufficient to merit habeas relief. *See Jones v. Gomez*, 66 F.3d 199, 204-05 (9th Cir. 1995) (vague speculation or mere conclusions unsupported by record not sufficient to state claim); *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief."). Accordingly, this claim is without merit and Petitioner is not entitled to relief.

//
//
//
//

19

**IV. Conclusion**

For the reasons stated above, the petition for writ of habeas corpus is **DENIED.**

Dated: July 14, 2011

_____
Marc L. Goldman
United States Magistrate Judge